Maury D. KLEIN, Plaintiff,

v.

Bruce GREENBERG, Defendant.

No. C–77–254–D.

United States District Court,
M. D. North Carolina,
Durham Division.

Dec. 12, 1978.

Frank R. Liggett, III and Peter M. Foley, Raleigh, N. C., for plaintiff.

R. Michael Strickland and J. Clark Brewer, Raleigh, N. C., for defendant.

## MEMORANDUM OPINION

GORDON, Chief Judge.

This matter is before the Court on the plaintiff's motion for a preliminary injunction to prevent the defendant from publishing and selling a book entitled *Greenberg's Price Guide to Lionel Trains, O and O–27 Trains, 1945–1977* (hereinafter referred to as the *Guide* ). In this action, the plaintiff seeks several forms of relief in connection with an alleged partnership between the plaintiff and the defendant. The plaintiff Maury Klein is a citizen of North Carolina. The defendant Bruce Greenberg is a citizen of Maryland. Jurisdiction is based on diversity of citizenship; the amount in controversy exceeds $10,000.00.

The plaintiff contends that the defendant and he entered into an oral partnership in 1975 to publish four books on model rail-

roading. The defendant informed the plaintiff on March 20, 1977, that he wished to terminate their business relationship. The plaintiff contends that their partnership was not terminable at will because it was for the specific undertaking of publishing four books and that therefore the defendant's action constituted a wrongful dissolution of the partnership which violated the Uniform Partnership Act, N.C.Gen.Stat. § 59–31 *et seq.* The plaintiff further alleges that subsequent to the wrongful dissolution of the partnership the defendant published and sold the *Guide* which the plaintiff contends is one of the four books originally intended to be published by the partnership.

◼ This case presents a difficult question on the proper application of the rapidly evolving preliminary injunction standard in the Fourth Circuit. The recent decision in *Blackwelder Furniture Company of Statesville, Inc. v. Selig Manufacturing, Inc.,* 550 F.2d 189 (4th Cir. 1977) has revolutionized the preliminary injunction standard to be applied by the district courts in this circuit. *See generally,* Note, *The Fourth Circuit's Liberal Approach to Preliminary Injunctions,* 14 Wake Forest Law Review 103 (1978). In *Blackwelder,* the late Judge Craven summarized the standards to be used by trial courts in granting or denying temporary injunctive relief:

> "[T]he first step in a Rule 65(a) situation is for the court to balance the 'likelihood' of irreparable harm to the plaintiff against the 'likelihood' of harm to the defendant; and if a decided imbalance of hardship should appear in plaintiff's favor, then the likelihood-of-success test is displaced by Judge Jerome Frank's famous formulation:
>
> > " '[I]t will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation.'

" . . . The importance of probability of success increases as the probability of irreparable injury diminishes, . . . and where the latter may be characterized as simply 'possible,' the former can be decisive. Even so, it remains merely one 'strong factor' to be weighed alongside both the likely harm to the defendant and the public interest [Citations omitted]." 550 F.2d at 195.

Thus under *Blackwelder,* the first step for a trial court in considering a motion for a preliminary injunction is to balance the likelihood of irreparable harm to the plaintiff against the likelihood of and the nature of the harm to the defendant. If it should appear that the balance is tipped in favor of the plaintiff, the trial court must then determine whether the plaintiff's claim presents a "serious, substantial, difficult and doubtful" question—that is, the plaintiff's claim is not frivolous and has at least some possibility of success on the merits. *Burford v. Sanford,* C–77–256–D (M.D.N.C. August 30, 1977).

◼ After considering the evidence and the arguments presented by the parties, the Court is of the opinion that this is not a case where the balance of hardships tips decidedly in favor of the plaintiff. The affidavits filed by the plaintiff tend to establish that the major hardships which confront the plaintiff in the absence of an injunction are the loss of goodwill and business reputation and the loss of potential sales.[1] On the other hand, the defendant's affidavits tend to show that, should an injunction issue, the defendant faces the loss of unknown numbers of sales of the *Guide* and some impairment of the financial condition of his personal business. The Court concludes that the hardships are in roughly equal balance between the parties.

The trial court's task in deciding a preliminary injunction motion does not end when the plaintiff fails to demonstrate that the balance of hardships tips in his favor. Unfortunately, *Blackwelder* and the later

---

1. Loss of goodwill and business reputation are harms which the *Blackwelder* Court found to be irreparable. 550 F.2d at 196–97.

decision in *Fort Sumter Tours v. Andrus,* 564 F.2d 1119 (4th Cir. 1977) leave some uncertainty regarding what should be the trial court standard for granting interim injunctive relief in this situation. *Fort Sumter Tours,* like *Blackwelder,* was concerned with a situation where the balance of hardships tipped decidedly in the plaintiff's favor. Part of the opinion may suggest a possible standard for use by trial courts confronting the situation presented in this case:

> "[I]n determining whether to grant or to withhold interim injunctive relief, the district court should consider (a) the applicant's probable right, (b) the likelihood of danger to that right if interim relief is denied (irreparable injury), (c) the harm to other interested parties of issuing an injunction, and (d) the public interest. In weighing these factors, a district court must recognize that there is a correlation between an applicant's probable right, i. e. the probability of his ultimate success in enforcing or protecting the right that he asserts, and the probability of irreparable injury to him. If the likelihood of success is great, the need for showing the probability of irreparable harm is less; but if the likelihood of success is remote, there must be a strong showing of the probability of irreparable injury to warrant the grant of interim relief." 564 F.2d at 1124.

This language seems to suggest that as long as a plaintiff makes a minimal showing of irreparable injury, a preliminary injunction should issue if there exists a strong likelihood of success on the merits. However, such a standard is an improbable one because it leaves no room for evaluating an injunction's effect on the public interest and the defendant.

A footnote in *Blackwelder* offers somewhat different guidance in cases where the balance of hardships stand in equipoise:

> "It is in just such a case that the probability of success begins to assume real significance, *see* p. 195 *supra* ; for if the factors of harm to the parties cancel each other, then 'greater significance must be placed on the likelihood that each party

will ultimately succeed on the merits.' *Delaware River Port Authority v. Transamerican real Trailer Transports, Inc.,* 501 F.2d 917, 924 (3d Cir. 1974)." 550 F.2d at 195 n. 3.

Although this language in *Blackwelder* is dicta, it provides a standard for the present case which is in keeping with the paramount importance *Blackwelder* placed on balancing the injury to the plaintiff against injury to the defendant. When considered in conjunction with the public interest, the *Delaware River Port* test provides the flexibility needed for assessing the four factors that are to be considered in preliminary injunction motions. For this reason, the Court will adopt this approach for the purpose of deciding the motion in the present case.

■ After considering the record and the arguments of the parties, it appears to the Court that the plaintiff has demonstrated a strong likelihood of success on the merits. Although the defendant denies that he and the plaintiff were ever engaged in a partnership, the defendant has admitted facts that establish that Klein and Greenberg were involved in an oral partnership to publish and sell one or more books on model railroading. The oral partnership is clearly established with respect to the book *A Comprehensive Guide to the Design, Construction and Operation of a Layout for Lionel Trains.* In his deposition the defendant admitted that he and the plaintiff had a similar arrangement with respect to the *Guide.* The existence of a partnership to publish and sell the *Guide* is also suggested by the fact that, at least twice in early 1977, the defendant's company advertised the *Guide* as the joint effort of the defendant and plaintiff. This partnership arrangement with respect to the *Guide* appears to be a partnership for a specific undertaking and thus would not be terminable at will under the Uniform Partnership Act. Therefore, the defendant's unilateral action to terminate the partnership would constitute a wrongful dissolution of the partnership and would permit the plaintiff to utilize the various equitable and legal remedies provided by the Act.

Finally, the Court concludes that the public interest would be unaffected by granting a preliminary injunction in this case which concerns a contractual dispute between private litigants. Therefore, under the *Delaware River Port* test, a preliminary injunction should issue in the present case.

Accordingly, counsel for the defendant is directed to file with the Court within ten days of this date any information the defendant wishes the Court to consider in determining the size of the bond required by Rule 65. Counsel for the plaintiff will file a response, if any, within fifteen days of this date.